Our next case is 4-17-0679, Tyler Scott. This is MCC Network Services, LLC. The trial court's order granting summary judgment and denying the plaintiff's motion to reconsider should be reversed and the case should be remanded because a genuine issue of material fact exists. The court erred when it made a finding that no genuine issue of material fact exists, when it improperly resolved conflicts in fact, when it improperly construed facts against the plaintiff and in favor of the defendant, and contrary to Illinois law, which requires that those facts should have been construed in favor of the plaintiff and strictly against the defendant, when the trial court did not consider all facts that were on the record and misapplied the law to the facts of the case. For those reasons, this matter should be reversed and remanded. The issue in this case is whether a genuine issue of material fact exists concerning whether the actions of the defendant caused the injuries to the plaintiff. Proximate cause is a cause that produces an injury through a natural and continuous sequence of events. There is ample evidence on the record that the plaintiff's injuries were caused by a natural and continuous sequence of events that started with the actions of the defendant. When, as such, this matter should go before a jury. And that's the general rule with proximate cause. Generally speaking, proximate cause is a question of fact. And that general rule should only be made exception to if there's undisputed facts and those undisputed facts only give rise to one inference. If a reasonable person would only see these facts to mean a singular inference that would support the defendant's motion for summary judgment. In what a court is considering this issue of proximate cause, it's a twofold inquiry. The first is whether the defendant's actions were the cause in fact of the plaintiff's injuries. And the second, whether the negligence was sufficiently closely connected to the injury such that the defendant should be held liable. In other words, the negligence isn't too remote. It's proximate to the injury. And if... Your Honor, talk to us about cause versus condition. Yes, Your Honor. I think the cause versus condition talks about the second factor that I was just describing. And the second factor is whether the negligence was sufficiently closely connected, whether it was proximate. And that's what you're referring to as legal cause, correct? Yes, Your Honor. Okay. Yeah. And I think that that is the primary issue in the case. So when we look at that issue, we have to look whether the injury is reasonably foreseeable. And the law is, as Your Honors know, not to tell you what the law is, but the case law supports that if an injury is reasonably foreseeable, then it is not so remote. It's proximate enough to the injury that it would be sufficient to support legal cause. And I think it's important to note, especially when we're considering this case at a summary judgment phase, that a plaintiff doesn't have to prove this at summary judgment, but only show facts that support the inference. And that inference must then be taken for the plaintiff. So when we look at the facts in this case, we see Misty Johnson driving north on 600th Street. She's approaching an S-curve. And in the middle of that S-curve, in other words, where it turns... I understand you call it an S-curve. Yes, sir. In the picture that we get in, I think, Appalachian Creek, page 4, it really looks more like just kind of a little bit of a jog in the road. Well, I think that, and I can pull it up here, I would respectfully disagree that it looks like a jog in the road. And I think that the evidence supports from multiple testimony of multiple witnesses that it's been referred to as an S-curve. So when we're starting to talk about the degree of the curvature of the road, when we're starting to talk about whether it is a sufficient amount of S-curvature in order to support the plaintiff's case, what we're really talking about there are disputed facts. And what we're really talking about are inferences. And those inferences have to be drawn in favor of the plaintiff. So when we look at the picture Your Honor is talking about, you can see that the S begins to turn left and then turns again right. So that's the creation of the S. And in the middle of the S is 2100th Street. So it's obviously a long distance and hard to judge from where we're at. But I think it's significant to note that the curvature of the road is crucial to understanding this case. And so when Your Honor says... Well, according to Mr. Sugarmurray. According to Mr. Sugarmurray, yes. Nobody else. Well, I think Mr. Sugarmurray gives the opinion, but I think that common sense also supports that. And when we look at the Smith case and the Knish case, when we're talking about this aspect of proximate cause, the legal cause, common sense is enough. And they actually say specifically that, that it's common knowledge that parking a vehicle on the side of the road in the Knish case might lead somebody in an emergency circumstance to pull off the side of the road and hit it. Common sense in that case was enough. Counsel, before you go any further, on the picture you just showed us, which is on our page four, as pointed out by Justice DeArmond, the trailer would be somewhere in between the left-hand curve and where the intersection is. Is that correct? After the intersection. It's after the intersection. So about 50 to 75 feet north of the intersection. After the intersection. Yes, Your Honor. So right as you come around the left curve, you enter that intersection, and that's then when you come across the trailer. Okay, thanks. About 75 feet after that. And that's really significant when we're talking about the legal cause. Because what the legal cause in this case really is, and I think it's important to go through the facts if I may briefly, that when the vehicle is traveling, when a reasonable driver is traveling north on 600th Street, in the dark on Christmas Eve, his lights or her lights are pointed directly ahead. But we're not talking about a reasonable driver. Well, I think we are when we're talking about legal cause. One of the things that I noticed in your brief was that at no time, unless I missed it, did you mention that the decedent's blood alcohol level was twice the legal limit and that her own children said she was driving at 80 miles an hour? Well, I think that that's true. I think on the one hand, it's not significant to the issue of motion for summary judgment. And they talk about that again in Condition Smith, where they talk about the notion that if the negligence of the driver comes into play, then that's for a jury to decide how much. In other words, approximate cause can be more than one cause. It can be two causes acting together to cause an injury. And that's really what the court's describing when they ask that question. It's the driver, Misty Johnson, who is somewhat negligent driving with a blood alcohol level, but in combination with her negligence comes the negligence of the placement of the trailer. So we have two acts acting together to cause a singular injury. And which proportion of liability each of those hold is a question of fact for the jury, which they discuss at least in Condition. They kind of bolster it in Smith, where they say, yeah, he may have had a few beers in the Smith case, and he may have been driving, I think that they don't use the word recklessly, but they use the word negligently. But so what? It's still a matter, it's still a question of fact. It's still an issue of fact for a jury to decide who bears what responsibility for the singular injury, although it was caused by two acts of negligence. Well, in Smith, he's in the middle of a snowstorm. Yes, sir. He abandons the truck on the side of the road. There's no warning lights, flares, or anything else. Yep. And somebody else during that same snowstorm winds up having a skirt window when they veer off the road and hit the vehicle. This is substantially different. This is a clear night. There are no obstructions. There are markings by the trailer. Everybody else says they could easily see the trailer as they approached it. Again, I would very respectfully disagree with Your Honor in the sense that when you're talking about, and I have to get through the facts of this in order to make sense, when you're talking about the vehicle approaching from the south, the only light that is in this entire area are the headlights of that vehicle. There's no artificial light. It's in the dead of night. It's on Christmas Eve. It's dark outside. The only light that's illuminating anything is on the vehicle, and those lights track with the way that vehicle is facing. That's why it's so significant. Was there any evidence that she lost control on seeing the trailer? Yes. Wayne Johnson testifies that he saw her slam on the brakes and swerve to miss the trailer. He said that after he'd already told the trooper that, no, he didn't see her hit the brakes. And the physical evidence is the first tire marks are some 250-some feet north of the trailer itself. Well, I think what first we're describing is a conflict in facts, that there's a conflict in facts that was just described by the court. But I also think that the police officer certainly changed his testimony. In other words, if you look in the accident reconstruction report for, I believe, it's a name that sounds like it may be cooler, that he writes in his report that he was told at the scene that Wayne Johnson saw the trailer swerve, and then kind of goes back on that. But the sworn testimony of the police officer saying, well, he didn't really tell me that, and Wayne Johnson's sworn testimony saying, yes, I saw the brakes and I saw the swerve, goes to the weight of his testimony. And we can't resolve that conflict in fact in a motion for summary judgment case. It would be entirely improper, which is one of the conflicts of fact that the judge at the trial court level can resolve. Even if you have the occupants of the vehicle saying, I was telling her to slow down, and she wouldn't, she didn't slow down until just before? Absolutely, yeah. I mean, we have an eyewitness conflicting with somebody else. The occupants of the vehicle, they say that I told her to slow down, right? And okay, that's fine, but it doesn't support that that now is an undisputed fact, because we have Wayne Johnson testifying that he sees her approach. We have Wayne Johnson testifying that he was behind her going about 60 miles an hour. He was catching up with her, and then he saw her slam the brakes, swerve out of the way. So we have eyewitness testimony setting that in motion. To bolster that testimony, we have an accident reconstructionist. We have Nathan Shigemura, who is no hack. I mean, Nathan Shigemura is highly qualified. His qualifications are attached to his affidavit. And he talks about that. Although it would have been nice if he told us in his affidavit what it was he was basing his opinion on. Well, he does talk about all of the evidence he bases his opinion on, and he goes through each of the facts that he considers as part of his opinion. He doesn't explain his mathematical contentions. He doesn't explain anything that tells us how he reaches the conclusions that he gave. Well, he does talk about how he reaches the conclusions in the facts section, but as far as his mathematical analysis, Illinois Supreme Court Rule 705 is very clear that he does not have to do that. In this case, defense counsel chose not to take his deposition. Defense counsel could have taken his deposition, could have talked to him about the data that supported his opinions, and would have been completely in line with then trying to attack the validity of his testimony. But at this stage, that still wouldn't have mattered. In other words, he could have said, well, I think physics would have had this result, and Shigemura could have said, no, physics would have had this result. It would have just been to his credibility, would not have been to the admissibility of his testimony. And certainly, Nathan Shigemura based all of his opinions, and he says, and I want to say maybe paragraph 18 or 19 when he starts to talk about the distances between tire mark 1, where it begins, and tire mark 2 and 3. I will have to check those paragraphs for you just to make sure that I'm right about that if you're pulling it out. But he does testify that when he's talking about the tire marks, he says that he's relying upon the accident reconstruction report put together by the Logan County Sheriff's personnel. It's paragraph 28. So 28 through about 30 is where he's talking about the tire marks and the distance that the vehicles had traveled, and that he's taking these numbers into consideration when he's making his calculations. So he supports it with the facts and the evidence, and he's attached to his affidavit all of the facts that he's looked at, the pictures, the depositions of all the police officers, the reports that were appended to those depositions. And so to say that he has to show his math is just incorrect. Illinois Supreme Court Rule 705 specifically states that the data underlying the opinions doesn't have to be talked about. Even at trial, you don't have to talk about it, but it is subject to cross-examination. So the proper way that that evidence could have been used to somehow impugn or impeach the testimony would have been by deposition. But even that wouldn't have mattered because it's still a fact in evidence that contradicts other facts in evidence, or at least supports the plaintiff's position if uncontradicted, which is really significant when we're talking about the second aspect of proximate cause, the legal causation. And I think that when you look at the cases cited by the plaintiff, and then you compare those to the cases cited by the defendant, we start to get a really clear picture of exactly what the courts mean when they say cause versus condition, which goes back to, I think, the original question in this line of questioning. When we talk... I have a question, counsel. Yes. In light of the court's ruling with regard to Investigator Sugarmore's affidavit, standing alone, is it Wayne Johnson's testimony and earlier statement with regard to a condition making the injury possible that you rely on? Is there anything else outside of what's in Sugarmore's testimony that would strengthen the proposition that somehow the trailer was involved in the accident? If I understand your question, are you asking whether Sugarmore's testimony is necessary for the plaintiff's case? No, I'm saying forget Sugarmore's testimony. All you have at this point is that you've argued here is Wayne Johnson's two statements. We know there's what was reported at the scene, and we know the testimony. What else do you have that links the trailer to the accident? Well, I think Wayne Johnson's testimony is enough, certainly. And then it's bolstered by... Yeah, I understand, but I want to make sure I have the total of what is your argument. Just so I'm clear on the question, I do think Sugarmore's affidavit addresses those issues. Right, I'm saying... The affidavit's gone right now in my little hypothetical. What do you have? Well, just the eyewitness account of Mr. Johnson. The kids were there. One was asleep in the back. But the eyewitness account of Mr. Wayne Johnson, I think, is what really supports the swerve, the breaks in the swerve. So when we talk about your original question, Justice Garmon, that we'll talk about the difference between a legal cause and a condition. When we look at the cases cited by the plaintiff, the Smith case and the Kanish case, what we're seeing is vehicles that are parked in a very similar fashion as the vehicle that's parked in this case, in some cases it's even exacerbated more in the case that's under review now, because the vehicle is actually in the roadway, which is a worse condition than the others. Another issue that I think is super important is the fact that the actions of the defendant are what caused this vehicle to be hard to see or not plainly visible, as has been coined in the briefs. And I think that's really significant. So when we talk about the Kanish case and the Smith case, the lack of visibility were outside of the defendant's control. You have a fog and you have a snowstorm. And still the court says, well, that's enough. You should have known that it might not be visible because of these issues outside of your control. In this case, the actions of the defendant by placing it in the middle of an S-curve on the roadway without artificial lighting, no previous warning, caused the vehicle to be less than plainly visible, to not be plainly visible. So in other words, it exacerbates the logic underlying the plaintiff's cases because the defendant's actions in this case actually caused the lack of visibility, which I think is very significant. And so when we compare that to the cases cited by the defendant, I think it really ties all this together very nicely. And particularly when I'm talking about the cases cited by the defendant, I'm talking about Bogovich, Long, and Jacquelet. Because those are the cases closest to this case. In each one of those cases, each and every one of them, the underlying logic could be phrased that even with unlimited advanced warning, it wouldn't have made a difference. Even with unlimited advanced warning of the placements of these vehicles, it wouldn't have stopped the injury. So when we look at Bogovich, the driver lost consciousness. That driver could have been warned a mile back, there's a vehicle up the road. He could have seen the vehicles, known the vehicle was there, but he lost consciousness. Consciousness, unconsciousness is what caused that injury. You look at Long, slid on ice. Long, the plaintiff could have known that the vehicle was parked on the side of the road for two miles back. Wouldn't have mattered because the placement of the vehicle wasn't what caused the injury. It was the fact that he slid on ice. And then we look at Jacquelet, not paying attention, talking. They could have had warning signs all over the road, flashing lights, artificial light showing exactly where it's at. None of those things would have mattered because he's looking over at his buddy, talking, not paying attention to the road. So in each one of those cases, the underlying logic unites under this notion that even with unlimited advanced warning, it wouldn't have made a difference because it was just the condition that allowed for the injury. The cause was really the ice, the loss of consciousness, the fact he wasn't looking at the road. Aren't these cases that you've just cited similar to a distracted driver in the scenario we have in this case? Intoxicated, distracted. Isn't that somewhat similar in the propositions you just argued? I don't think so, Your Honor. No, because there's no evidence that she wasn't looking at the road. In fact, the inference is that she was because she slammed the brakes and she swerved. So we know that she saw it. So with unlimited advanced warning coming around the curve, in other words, the only warning she has as she comes around that curve is when she starts to cross the intersection, now her lights are on the vehicle, 75 to 50 feet away. Seventy-five, according to Shigemura, 50, according to the defendant. Fifty feet, 75 feet. Seventy-five feet at 50 miles an hour is one second. That's how fast a vehicle goes at 50 miles an hour, one second. When those lights finally reflect on this vehicle, that heretofore has been cloaked in darkness, out of the way, placed in the middle of the road, defying a reasonable expectation when we're driving on the road at night on Christmas Eve. Placed in the middle of the road? Well, poor phraseology. Placed on the side of the road. So placed into the driver's lane, I think is a better phraseology. I apologize, Your Honor. That was a poor misstatement. Placed in, encroaching into the driver's lane. When we're driving in the middle of the night on an S curve, with our lights being the only thing that tell us what's in front of us, as reasonable drivers, our expectations are violated when we come around and suddenly, 75 feet away, we see, for the first time, a trailer. And the only warning devices are up against the trailer. So, in other words, when we see the trailer, we see the warning devices. Entirely ineffective. How do we know when she saw the trailer? Well, she slammed the brakes on it and swerved. So, in other words, according to Mr. Johnson. Yes, Your Honor. That's the only indication of that. The eyewitness testimony. No physical evidence of the scene to indicate that. Nor did the other two people in the vehicle say that she did that. I would say there's a conflict of fact there also. The same testimony of Kohler that we're talking about, where he talks to Wayne Johnson in the police report, he also talks about the fact that he saw tire marks. In his deposition, he pulled back and said, well, I don't know if they were the skin marks from this accident, so I just gave it over to Officer Kink, and then he deferred to Officer Kink. But in his police report, he wrote, saw the skin marks. Are these tire marks skin marks, or are the tire marks pursuant to her trying to stop, like slamming on the brakes, or do we know? Just rubber on the road, I guess. I think rubber on the road is the best the police are able to tell us. But that's why the eyewitness account of Wayne Johnson is so significant. If I may just conclude by asking that you please reverse the court's order, grant a summary judgment, and deny the motion to reconsider and remand. Thank you, Your Honor. Thank you, Mr. Nestler. Mr. Green. May it please the Court, Counsel, there is no evidence of MCC's trailer in the proximate cause of the accident. As we know, Misty Johnson's pickup truck never made contact with the trailer. And not only that, her tire marks did not begin until 464 feet past the trailer. It was at that point that Misty, who we know was intoxicated, failed to negotiate the second curb in the road. So there's no connection between the trailer and the accident, not even a remote connection. But even if the trailer furnished a condition which made the accident possible, MCC was still not the proximate cause, based on the Supreme Court's ruling in First Springfield Bank v. Goldman. So based on the undisputed material facts in the record, the trial court got it right by entering summary judgment. It's significant that this accident happened on a clear night. The weather was not a factor. No fog, rain, snow, nothing like that. And so Misty was going north on 600th Avenue. You've seen the aerial map. The Court can take judicial notice of the aerial map. It's not really an S-curve. I think that would be a misnomer. But if you're going north, you do have to curve a little bit to the left. Misty was able to negotiate that first curb. And we don't know anything really about the exact speed she was going once she got in between the curbs. And when I say it's not an S-curve, the aerial map shows there's really a straightaway in between the curbs. And so what we do know is, of course, she was intoxicated. She gets in between the curbs. Her poor son, Skyler Hashman, is pleading for her to slow down. But she speeds up in between the curbs. But she's able to get around the trailer. I'm sorry. She speeds up in between the curbs. What testimony? The testimony of Skyler Hashman is that after his mother, Misty, negotiated the first curb, that she started to speed up. And he was pleading for her to slow down. But she was able to get around the trailer. No problem. There was no traffic coming in the opposite direction. The testimony is there's plenty of room on the road for her to get around the trailer. Even one of the deputies said had a car been coming the other way, which was not the case, but if a car had been coming the other way, there still would have been enough room for the southbound car to pass, for Misty to go north and get around this trailer. And there's no evidence at all of any skid marks near the trailer. There's no evidence of the truck leaving the road near the trailer. And then, of course, not only was Skyler pleading for his mother to slow down, but he testified that she was dancing and hitting the steering wheel, tapping on it and singing. He told her to turn the radio down. She told him to shut up and this ain't my first rodeo. Those were her exact words, according to Skyler, and it was moments after that that the accident happened. And, of course, I'm big on sports analogies, but the tire marks begin 464 feet past the trailer. That's the length of one and a half football fields. And so it's at that point that a portion of the car, the left side, left the roadway where tire mark one is. That's the first indication of even a partial leaving the roadway. And then she tries to go back on the road, overcorrects, and then about 286 feet, I believe, north of where tire mark one is is where the car, the truck, completely left the road for the first time. That's 750 feet north of the trailer. So the trailer didn't have anything to do with this accident. It was intoxication. Mr. Green, recognizing what the physical evidence is, why are we permitted to disregard Wayne Johnson's testimony entirely and find that there is no question of fact? There are two parts to that. The first part is, after I took his deposition, I was scratching my head because I wasn't really sure what he said. But the argument, of course, by my opponent is, well, Wayne says that Misty swerved or put a brake on around the time that she went to try to go around the trailer. But then when I further examined him, he could not see the trailer at the time that she swerved. So I think he's guessing that that's what happened because then he later drove by the trailer. That's all I could gather from that. But even if this court had to believe that that's true, there's still no question of fact because it was a clear night and she was able to make her way around the trailer. There's no tire mark until one-and-a-half football fields after that. So even if she did put her brakes on or swerved to some extent near the trailer, that doesn't create a question of fact. The cases that are really on point, and let me say this also, that even if the court concluded that this accident wouldn't have happened if the trailer had not been there, some re-judgment is still appropriate. In the Gallman case in the Supreme Court, of course the accident happened here in downtown Springfield. The defendant had illegally parked a truck mid-block and the Supreme Court held that, well, certainly this accident there in downtown Springfield wouldn't have happened but for this truck being parked illegally. But the cases that are really on point are Gallman's a little bit different, although that sets forth the condition versus cause doctrine in Illinois, which is still the law here. And of course I've even cited cases from Massachusetts and New York. Typically I wouldn't do that, but I doubt if those are conservative forums, yet they still follow the black-letter law where they make that distinction between condition and cause. And of course those are cases where, like here with Jango and Ott and with Long, where the driver actually ran into something that was parked illegally. And in Jango and Ott, the driver had had 10 to 15 beers, was driving down Route 6 near Peru, Illinois, and early morning hours he collided with the defendant's car. The defendant's car was partially blocking U.S. Route 6, but there was a judgment entered in favor of the defendant, the car owner, as a matter of law, and the court held that that wasn't the proximate cause of the accident. It was a clear night, and Long was the same thing. The defendant's car was parked with one wheel protruding slightly on the traveled portion of a road. The road conditions were hazardous. Plaintiff's car lost control and slid into the defendant's car. Nonetheless, the appeals court upheld summary judgment in favor of the defendant, found that the placement of the parked car was not the proximate cause of the accident. But summary judgment is even more appropriate here in those cases because there was no contact between the trailer and Misty's truck. The cases that were relied upon by the plaintiffs here are easy to distinguish. The Smith case, weather was a factor. There the plaintiff's car collided with an abandoned truck, but it was during a snowstorm and there was ice on the road, and the flashers and warning devices on the truck had been turned off. In this case, not only did Misty not run into the trailer, but there were some cones and a barricade, and those devices had been placed there early in the evening by Deputy Kuhlman. In the Kinch v. DeVito construction case, the plaintiff's husband's car crashed into a cement wall on the side of the road, but there was fog and it was impossible for the driver to see for more than five feet. So you can see where these two cases that are primarily relied upon by plaintiffs are easy to distinguish. Weather was a factor. We don't have that here. And I think when I first got the case, what I think the plaintiff was trying to say, and, of course, allegations are in ways that are not evidence, but this is not a situation where somebody is driving down the road and then they make a curve in the road and all of a sudden there's some object there that shouldn't be there. If you look at the aerial map, when you're going north on 600th Avenue, you get to a curve and then there's a considerable distance from there to the intersection, and then it was 50 feet past the intersection where this trailer was located. So everybody else said they had no problem seeing the trailers heading north on 600th Avenue, and that's what makes this case, the clear weather, the clearly visible trailer, makes this case easily distinguishable from the cases relied upon by plaintiffs. And then, of course, as far as Mr. Shigemura's affidavit, any of the material facts in there are based purely on speculation. I don't know how in the world he can say what the speed of the car was at the beginning of this quote, unquote, rollover event. He doesn't say where the rollover event begins, and there's a huge gap here, and the gap is what happened to Misty's truck in between the time she successfully passed the trailer and to where her skid marks begin, 464 feet down the road. Nobody explains that. So it's not like you've got a continuous sequence of events that start at the trailer that caused her to not be able to negotiate the second curve. There's just no connection here, and any connection is at best remote. Mr. Green, I didn't see where the two minors who gave depositions indicated whether they saw the trailer. Was that question never asked of them? I don't recall if the question was asked. I think Tyler Scott, the daughter, was asleep, doesn't remember anything about the accident. She doesn't remember anything once her mom got into the straightaway in between the curves, and then Skyler Hashman didn't really recall anything. I don't think there's anything in the record as to him noticing the trailer, but what he did say was he was telling his mom to slow down in between the curves, and she was busy tapping on the steering wheel. Right. Why was the trailer there, and how long had it been there? According to the record, it had been there even earlier in the evening. That's when Deputy Kuhlman noticed it, and it must have been windy, and he rearranged the cones and the barricade. There's nothing in the record as to why. I can tell you why it was there, but it's not in the record. Is there anything in the record that indicates whether it had been there for several days or just several hours? No. The first evidence in the record of it being there is earlier in the evening. I think the accident happened around 10, 10.30 and a few hours earlier. Deputy Kuhlman had driven by and had noticed it. Would you agree that if the court had considered the plaintiff's reconstructionist expert, that the outcome of the motion for summary judgment may have been different? It would not have been. Well, in addition to it being filled with conclusory opinions, what difference does it make what the speed was? And then, of course, he's got some other math in there. I don't know where he comes up with the trailer being 75 feet north of the intersection, and then his distance between the trailer and the first tire mark is less than what I have, but it's still more than one football field. It's still more than 300 feet. And so he doesn't explain that gap. He glosses over that. I guess what I'm getting at is why is it proper for the court to consider the opinion of the accident reconstructionist favorable to the defendant but not the opinion of the accident reconstructionist favorable to the plaintiff? You're asking? Well, the court considered that the state trooper did a reconstruction. That was taken into consideration, but the affidavit, which I guess represented the opinion of the reconstructionist hired by the plaintiff, was not taken into consideration because it was speculation. Why is one speculation but not the other? That's what I'm trying to get at. Well, of course, the Illinois State Police reconstructionist was focused on making these different measurements, and he walked a few 30 feet or so south of where the skid marks began and didn't even think it was necessary to go further south. And so the things that the court relied upon were, I mean, there was some substance. He was there. He was an eyewitness. But even Kent can't tell us what happened to Misty's truck in between the time she passed the trailer or a fire marked one. That's all speculation. So my opponent tried to get Kent to speculate as to what happened during the gap. But anything's a mere possibility, but a mere possibility doesn't create a question of fact. Okay, and he cited to this court in his world that what their expert was saying should have been considered based upon, I think he said, Rule 705. What's your response to that? Well, when you file a summary judgment motion, the opponent, that's kind of a put-up-or-shut-up time. You have to put all of your evidence forward. All this court can do, just like the trial court, is look at the undisputed evidence in the record and is that sufficient to overcome my motion for summary judgment. It's not for all the reasons I previously explained. But the big thing here is there was never any contact between Misty's truck and the trailer on a clear night, and then there's no evidence of what happened to her truck between the point of the trailer and 464 feet down the road. So there's no way to close that big, as I call that, the gap, and Shigemura tries to gloss over that. And at full stack like that, it doesn't happen. It's like she swerved, and then all of a sudden she has to put her brakes on. But that doesn't make any sense. Well, what if the trailer, instead of just being slightly encroaching upon the northbound lane, was like halfway across it, yet there was no contact with it and no tire marks for several hundred feet later, football field and a half? Would you still be arguing that there's no legal cause here? There's no legal cause in those circumstances. Even under that hypothetical? Yes. And I think even if she had run into the trailer, which she didn't do, and of course the testimony was, and we've not admitted negligence, but I realize for purposes of the motion, you have to assume my client put the trailer in a spot I wasn't supposed to be, but the evidence is that it may have been 6 to 12 inches onto this oil and chip road, but it's hard to distinguish sometimes between the oil and chip and the pebbles on the side. There was no center line and no shoulder lines. So Shigemura's testimony, first of all, speculative, and even if you agreed with his measurements, it doesn't change the case at all because he doesn't explain the gap. He's just trying to say, well, she wasn't speeding. There's no basis. I mean, Wayne Johnson didn't know the speed of Misty's car in between the curves, but we do know she was intoxicated and we do know that she failed to negotiate the second curve, 464 feet past the trailer. So for these reasons, I would ask that the circuit court summary judgment be affirmed. Thank you. Thank you, Mr. Green. Mr. Nesta. A few things I'd like to address. Both Mr. Kink and Mr. Shigemura address what happens to the vehicle after a swerve. The driver's side wheels of that vehicle left the roadway and then eventually came to reenter the roadway. When we think about this, it explains why there's no tire marks because the wheels are off of the roadway, at least the driver's side wheel. The first tire marks appear when those wheels reenter the roadway, either somewhere between 400 and 357 feet after the trailer. When we're talking about the physical evidence, and that's something that Justice DeArmond brought up, well, let's put aside the physical evidence or recognizing the physical evidence is what it is. I think it's extraordinarily important that we talk about the physical evidence in a light that was favorable to the plaintiff. And when we talk about the physical evidence, not in terms of football fields from an individual standpoint, but instead in a light that was favorable to the plaintiff, in terms of how fast a vehicle travels 800 feet when it's traveling at 50 miles an hour, that's in a light that was favorable to the plaintiff. Ten seconds, 10.1 seconds is what it takes for a vehicle to travel 800 feet at 50 miles an hour. So I'd like to walk the Court through, briefly, from the time that the... Are those calculations in the report of Mr. Shigemura or the accident reconstruction? The calculations of the distances are in the report, yes, Your Honor. In other words, in paragraphs... Are the calculations of speed? Between 47 and 50 miles, or 43 and 50 miles an hour, yes, Your Honor. The defense... The opinion is, but is there any indication as to what that opinion is based on? Does he say taking a number of feet times... Yes, Your Honor. He takes into consideration the distances as they were taken by the police. That's from paragraphs 28 through 30. That's where he drew those conclusions. In other words, he talks about all of the evidence that he considered. He just doesn't show the equations, which is entirely unnecessary. To say that we have to throw everything that we can at a motion for summary judgment is an incorrect statement of law. It is outside of the rules. What we have to throw in terms of an affidavit at a motion for summary judgment is defined by Illinois Supreme Court Rule 191A. According to that rule, which defines exactly what we need in order to file an affidavit in response to a motion for summary judgment, we need to state facts upon which the claim is based. Trigger Murray does that in his affidavit. He does it in paragraphs 9 through 43. The sworn copies of all documents upon which the affidavit relies. Those were attached to the affidavit. Does it consist of conclusions? No. There's 40 paragraphs of facts included in this. And does it show that the affidavit is competent? Yes. In other words, to say that because we filed an affidavit when the defendant decided not to take the deposition of our expert... In other words, the defense says, I don't want to take his deposition. Instead, we have to file an affidavit in order to satisfy that requirement that we create a rule or a genuine issue of material fact. To say that that creates a higher onus on the plaintiff is just not accurate. Instead, we look to Rule 191A, and it tells us exactly what we have to do. It says it has to be filed within a certain timeframe, and that's defined by Section 2-1005. Both of those are met. In other words, the requirement has been met. In this case, the testimony of Nathan Sugimura is simply not speculative. Very briefly, I would like to go through this timeframe. At one second, we see the trailer. We're off the roadway, and now we're back on the roadway. Now we're overcorrecting, now we're flipping, and now we've come to a stop. Ten seconds at 50 miles an hour. That is how fast this accident occurs. After we swerve to miss the trailer, the driver's side wheels are off of the roadway. We see the tire marks as it comes back onto the roadway. Overcorrects and flips. Ten seconds. That's how fast this accident occurred. I think that the court should reverse the motion for summary judgment and the judgment to deny the motion to reconsider and should remand for further proceedings. Thank you. Thank you, Mr. Nestler. Thank you, counsel. The matter will be taken under advisement for the middle of the fall.